**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 9:23-cv-81246**

DUVALL ESPRESSO IP ENFORCEMENT, LLC,
a Florida Limited Liability Company,

        Plaintiff,

v.

DECENT ESPRESSO INTERNATIONAL LTD.,
a Chinese business entity,

        Defendant.
_____/

**DECENT ESPRESSO INTERNATIONAL LTD.'S**
**MOTION TO DISMISS BASED ON INSUFFICIENT SERVICE OF PROCESS OR,**
**ALTERNATIVELY, TO QUASH INSUFFICIENT PROCESS**

Putative Defendant, DECENT ESPRESSO INTERNATIONAL LTD., a Hong Kong SAR business entity ("Decent HK"),[1] makes this special appearance to contest service of process and either dismiss the Amended Complaint for insufficient service of process under Fed. R. of Civ. P. 12(b)(5) or quash the insufficient process. Decent HK explains further as follows:

**I.    PROCEDURAL HISTORY AND FACTS**

Plaintiff, Duvall Espresso IP Enforcement, LLC, filed this case on September 9, 2023 identifying three defendants: Decent Espresso LLC, a California LLC ("Decent California"), Decent Espresso LLC, a Wyoming LLC ("Decent Wyoming"), and Decent HK. Plaintiff initially served only the California and Wyoming LLC's, both of which moved to dismiss the case based

---

[1] Decent HK is misidentified in the Amended Complaint as "a Chinese business entity." It is properly referred to as "a Hong Kong SAR business entity." If the case persists, Decent HK will request that the case caption be changed accordingly.

1

on, *inter alia*, improper venue. D.E. 9. Following Decent California's and Decent Wyoming's production of limited, preliminary, agreed-upon discovery responses, Plaintiff determined that there was not a basis for claims against those entities and voluntarily dismissed them (hereinafter the "Dismissed U.S. Entities"). D.E. 25.

Thereafter, Plaintiff began its pursuit of service of process against Decent HK. Specifically, on December 22, 2023, Plaintiff, for the first time, applied for a summons against that entity. However, Plaintiff did not seek a summons for personal service on Decent HK at its published offices in Hong Kong. Instead, Plaintiff sought a summons for substituted service of process on the Florida Secretary of State pursuant to Fla. Stat. §§ 48.161 and 48.181. D.E. 28.

Subsequently, on January 8, 2024, Plaintiff filed a purported "Return of Service" comprised of a letter from the Florida Secretary of State. D.E. 30. The letter is dated December 27, 2023, or 12 days earlier, and states that the Secretary of State accepted substituted service of process for Decent HK. The letter also states, "The Secretary of State does not forward documentation to the Defendant."

Plaintiff contends that on January 8, 2024, it mailed the summons and Amended Complaint (hereinafter, the "Complaint") to Decent HK'S "last known physical address via registered mail and last known electronic address, both of which were obtained from a third-party website." *See* Amended Affidavit of Compliance, D.E. 37 at 5. Referencing an unidentified document it calls "proof of service," which does not reflect a delivery address, Plaintiff claims that the summons and Complaint were delivered to Decent HK on February 3, 2024.

As discussed below, Plaintiff has not fulfilled statutory requirements for substituted service of process, which requirements must be strictly construed, such as, for example, initially attempting personal service (which was not done here), as well as timeliness of service and filing

2

appropriate proofs of service. Nor has Plaintiff effectuated proper service of process under the Hague Service Convention to which Hong Kong is a signatory.

Based on these facts, Decent HK now moves to dismiss the Complaint under Fed. R. of Civ. P. 12(b)(5) for insufficiency of service of process or, alternatively, to quash service of process.

## II.  SUMMARY OF ARGUMENT

Plaintiff's position concerning service of process on Decent HK is set forth in its Amended Affidavit of Compliance, D.E. 37 (hereinafter, "Affidavit"). The entirety of that Affidavit, however, focuses exclusively on whether Plaintiff properly effected substitute service of process on the Florida Secretary of State under Fla. Stat. §§ 48.161 and 48.181. It is silent regarding compliance with the Hague Service Convention.

Process is insufficient in this case for numerous reasons. First, Plaintiff did not in its Complaint plead grounds to support substituted service of process under Fla. Stat. § 48.181. And even if it had done so, the attached Declaration of Harriet Harpley conclusively rebuts any argument for substitute service of process on the Florida Secretary of State.

Further, even assuming, *arguendo*, that substitute service of process was permitted in this case (it is not), Plaintiff did not comply with the procedural requirements under Fla. Stat. § 48.161 for serving substitute process, which requirements must be strictly construed. In particular, Plaintiff did not send process to Decent HK "forthwith" after serving the Secretary of State and did not file a valid proof of service.

Finally, even if Plaintiff complied with Florida law, it failed to transmit these judicial documents for service in Hong Kong under the Hague Service Convention as required by legal precedent in this district. Nor did Plaintiff otherwise comply with the requirements of the

3

Convention, including providing certified translations of the documents. We address each of these arguments, with applicable legal standards, in turn.

### III.     LEGAL ARGUMENT

#### A.     <u>No Basis for Substituted Service of Process under Fla. Stat. § 48.081</u>

"[T]he fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff ....'" *Cook v. Maximus Int'l Specialists*, 664 F. Supp. 3d 1353, 1359 (S.D. Fla. 2023) (citing *Shurman v. Atlantic Mortg. & Inv. Corp.*, 795 So. 2d 952, 953 (Fla. 2001)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. (citing *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)). If service of process is insufficient, the court has no power to render judgment. *San-Way Farms, Inc. v. Sandifer Farms, LLC*, No. 8:20-cv-1969, 2021 WL 1840769 at *3 (M.D. Fla. May 7, 2021) (citing *Shurman, supra*).

Even where parties have actual notice of a proceeding, they are still entitled to receive proper and sufficient service of a summons and complaint. In other words, "ineffective service cannot become effective simply through the defendant's knowledge of a proceeding. This would essentially waive a defendant's right to be served properly upon a showing that they possess knowledge of a legal proceeding." *Sale v. Jumbleberry Ent. USA, Ltd*., No. 20-20716, 2021 WL 1084573, at *1 (S.D. Fla. Mar. 22, 2021).

Under Florida law, "to serve a foreign corporation that is alleged to be doing business within the State of Florida, a plaintiff must serve the summons and complaint on the Florida Secretary of State and on the foreign corporation at its overseas offices." *Vega Glen v. Club*

*Mediterranee, S.A.*, 359 F. Supp. 2d 1352, 1356 (S.D. Fla. 2005); *Castaneda v. Luitpold Pharmaceuticals, Inc.*, No: 6:22-cv-1141, 2022 WL 17542939 at *2 (M.D. Fla. Nov. 14, 2022). Specifically, the statute provides, in relevant part:

> The acceptance by any individual who is a resident of any other state, territory, or commonwealth, or of any foreign country, or by any foreign business entity of the privilege extended by law to nonresidents to **operate, conduct, engage in, or carry on a business or business venture in this state, or to have an office or agency in this state**, is deemed to constitute an appointment by the individual or foreign business entity of the Secretary of State of this state as its agent on whom process in any action or proceeding against the individual or foreign business entity, or any combination thereof, arising out of any transaction or operation connected with or incidental to the business or business venture may be served as substituted service in accordance with this chapter.

Fla. Stat. § 48.181(2) (emphasis added).[2]

"The burden of proof to sustain the validity of service of process is upon the party seeking to invoke the jurisdiction of the court." *Torres v. International Lifestyles, Inc.*, No. 04-61729-Civ-Marra, 2005 WL 8155312 at *2 (S.D. Fla. Sept. 29, 2005) (citations omitted); *Green v. Jorgensen*, 56 So. 3d 794, 798 (Fla. 1st DCA 2011). In order for substituted service to be effective, "a plaintiff must allege sufficient facts that the non-resident defendant was doing business in Florida, and that the cause of action sued upon arose out of such business." *Id.*; *Ure v. Oceana Cruises, Inc.*, 122 F. Supp. 3d 1351, 1354 (S.D. Fla. 2015) (quashing service under Fla. Stat. § 48.181 where "[p]laintiffs have not sufficiently alleged that the cause of action arose from business activities in the state of Florida").

---

[2] Substituted service is also permitted under circumstances not present, alleged, or applicable here, such as where a foreign business entity conceals its whereabouts or sells, consigns, or leases property through brokers or distributors residing in Florida. *See* subsections (4) and (5).

Moreover, "bare or conclusory allegations in a complaint that the defendant has conducted business in Florida are not sufficient to overcome a defendant's affidavit to the contrary." *Id*.; *Compania Helvetica v. Zorilla*, 479 So. 2d 855, 855 (Fla. 3d DCA 1985) ("the bare allegations of a complaint, unsworn to, are not sufficient to support jurisdiction when a foreign defendant has filed sworn affidavits controverting the facts as alleged").

Finally, "statutes providing for substituted service must be strictly construed." *Torres, supra; Government Employees Ins. Co. v. Utter*, No. 6:23-cv-943, 2023 WL 8234582 at *1 (M.D. Fla. Nov. 28, 2023) (stating that "[t]he courts have consistently observed that statutes relating to substituted service of process (in lieu of personal service of process) must be strictly construed").

In *Farrell v. Royal Caribbean Cruises, Ltd*., 917 F. Supp. 2d 1248 (S.D. Fla. 2013), the court quashed service of process via substituted service on Florida's Secretary of State where the plaintiff failed to allege that the defendants "operate, conduct, engage in, or carry on a business or business venture in Florida, or have offices or agencies in Florida, and that her cause of action arose from these business activities" while the defendant provided evidence that it "never carried on business activities in Florida." *Id*. at 1254.

Plaintiff alleges in the Complaint that Decent HK "is a Chinese business entity operating in China" that "directly or indirectly regularly conduct[s] business in this judicial district, *e.g*., at least through https://decentespresso.com/." Complaint, ¶ 5. Plaintiff also asserts, without reference to any proof, that Decent HK "has shipped, directly or indirectly, the Accused Products … to Florida residents, including shipping, as of March of 30, 2022, at least 28 of the Accused Products to Florida residents, wherein 15 of those 28 Accused Products were shipped to residents within this judicial district." *Id*., ¶ 6. And referring to a blog post "snippet" on "reddit," Plaintiff alleges that "[one or more of the Defendants has received one or more of the Accused Product(s) … from

Florida resident(s), as part a warranty program and/or a servicing contract, wherein it is unknown if a distribution center or other physical geographic location located within the state of Florida received that Accused Product(s) on behalf of the Defendants before it was sent to Defendants for repair, thus making Florida and/or this judicial district, a regular and established place of business." *Id*., ¶ 7. These allegations are insufficient to invoke substituted service of process under § 48.181.

Initially, while Plaintiff asserts that Decent HK, through the cited sales of its products, "conducts business" in Florida, Plaintiff does not specifically allege that Decent HK "operates, conducts, engages in, or carries on a business or business venture in Florida" for purposes of allowing substitute service of process through the Secretary of State. (emphasis added). Plaintiff has thus facially failed to establish a basis for substituted service of process. And even if it had, Plaintiff's conclusory allegations are insufficient to overcome the averments to the contrary set forth in the Declaration of Harriet Harpley ("Decl."), attached hereto as **Exhibit 1** and discussed below. *See Torres, supra; Farrell, supra*.

Plaintiff's allegations boil down to the assertions that Decent HK carries on or conducts business in Florida because it ships products to Florida consumers and receives them back from consumers for repair, either directly or through a distributor in Florida. But this is not sufficient, by itself, to establish that Decent HK is carrying on a business in this State.

Specifically, in *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd*., 579 Fed. Appx. 779 (11th Cir. 2014), the court, considering long arm jurisdiction under related § 48.193(1)(a)(1), explained that "[i]n order to establish that a defendant is 'carrying on business' for the purposes of [Florida's] long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Id*. at 783 (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A*., 421 F.3d 1162, 1167 (11th Cir. 2005)). The court continued:

> In *Horizon Aggressive* we listed several factors courts should consider in determining whether a defendant engaged in a "general course of business activity." … These include: (1) "the presence and operation of an office in Florida"; (2) "the possession and maintenance of a license to do business in Florida"; (3) "the number of Florida clients served"; and (4) "the percentage of overall revenue gleaned from Florida clients."

*Id*. at 784 (citations omitted). Although these factors are not dispositive, *id*., the Eleventh Circuit in *RMS Titanic* noted that "this Court and Florida courts have applied them to preclude jurisdiction before:"

> For example, in *Horizon Aggressive*, we held that there was no jurisdiction because the defendant did not have any operations in Florida, served only six Florida clients, and the revenues from those clients amounted to less than five percent of its gross revenue. *Id*. at 1167. And in *Milberg Factors, Inc. v. Greenbaum*, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991), a Florida district court of appeal declined to exercise jurisdiction under the business venture provision where the defendant did not maintain offices, employees, or telephone listings in Florida, did not solicit business in Florida, and its only business connections to Florida were five "isolated" factoring agreements over a ten-year period with Florida-based companies that amounted to less than two percent of its total revenue.

*Id*. at 784 (similarly declining to exercise jurisdiction).

Here, as set forth in the attached Declaration of Harriet Harpley, Decent HK is a corporation organized and existing under the laws of Hong Kong. [Decl., ¶ 3]. Decent HK has never: a) had a regular or established place of business in Florida [*Id*., ¶ 4]; b) had any offices or any other physical, geographical location in Florida from which its business is conducted or carried out [*Id*., ¶ 5]; c) had any employees who reside, work from, or are physically located in Florida [*Id*., ¶ 6]; d) been registered as a foreign corporation doing business in Florida [*Id*., ¶ 7]; e) owned or leased real property in Florida [*Id*., ¶ 8]; f) owned or held any bank accounts in Florida [*Id*., ¶ 9]; or g) had any member which or who has ever had any of the foregoing contacts with Florida [*Id*., ¶ 10].

Plaintiff stakes its claim for substitute service of process on its statement that Decent HK sold 28 machines to Florida residents. But Plaintiff does not cite or provide any support for that claim. Nor does Plaintiff identify the percentage of Decent HK's overall revenues that those sales represent. However, as set forth in Ms. Harpley's Declaration, Decent HK's revenues from sales of espresso machines in Florida is estimated to be less than 2.5% of its overall revenues. [Decl., ¶ 11].

Assessing the *Horizon Aggressive* factors listed above, Plaintiff has not established that Decent HK operates, conducts, engages in, or carries on a business or business venture in Florida for purposes of allowing substitute service of process through the Secretary of State under Fla. Stat. § 48.181.

Plaintiff's assertion that Decent HK may have a distribution center or other physical geographic location located within the state of Florida giving rise to substituted service of process is also insufficient and unsubstantiated. Indeed, Decent HK does not have a distribution center in Florida, whether to distribute its products or to retrieve them from consumers for warranty repair. [Decl., ¶ 12].

Nor does Plaintiff allege that Decent HK uses "brokers, jobbers, wholesalers, or distributors" located in Florida to sell its products as required under § 48.181(5). In any event, Decent HK does not. [Decl., ¶ 13].[3]

---

[3] Even if Plaintiff had alleged that Decent HK sold its products through brokers or distributors in Florida, it would have still needed to establish that Decent HK "has some degree of control over the broker or control over the [property] in the hands of the broker" to show that the foreign defendant operated, conducted, engaged in, or carried on a business or business venture in this state. *See Northern Ins. Co. of NY v. Construction Navale Bordeaux*, No. 11–60462, 2011 WL 2682950 at *3 (S.D. Fla. July 11, 2011).

In sum, Plaintiff has not established a basis under Fla. Stat. § 48.181 for substituted service of process on Decent HK through the Florida Secretary of State. The Complaint should therefore be dismissed or process quashed.

**B.      Failure to Comply with requirements for substituted service of process under Fla. Stat. § 48.161**

Even assuming, *arguendo*, Plaintiff could establish a basis for substituted service of process under Fla. Stat. § 48.181, Plaintiff failed in several respects to comply with the strictly construed requirements for such service under § 48.161.

When substituted service on the Florida Secretary of State is attempted to be made under Fla. Stat. § 48.181, "service … must be effectuated in the manner prescribed by" § 48.161. That section recognizes "[t]he general rule in Florida … that a defendant must be personally served." *Societe Hellin, S.A. v. Valley Commercial Capital, LLC*, 254 So. 3d 1018, 1020 (Fla. 4th DCA 2018). Specifically, subsection (2) requires a plaintiff, in its affidavit of compliance, to "set forth the facts that justify substituted service under this section and that show due diligence was exercised in attempting to locate and effectuate personal service on the party before using substituted service under this section."

Under subsection (4), the party effectuating service is considered to have used due diligence if that party:

(a)   Made diligent inquiry and exerted an honest and conscientious effort appropriate to the circumstances to acquire the information necessary to effectuate personal service;

(b)   In seeking to effectuate personal service, reasonably employed the knowledge at the party's command, including knowledge obtained pursuant to paragraph (a); and

(c)   Made an appropriate number of attempts to serve the party, taking into account the particular circumstances, during such times when

10

>and where such party is reasonably likely to be found, as determined through resources reasonably available to the party seeking to secure service of process.

In its Affidavit, Plaintiff, citing *Ganpat v. Aventure Inv. Realty*, acknowledges that it was required to exercise due diligence in attempting to locate Decent HK before resorting to substitute service of process. See D.E. 37 at 2. But the "efforts" Plaintiff identifies are completely devoid of "attempting to locate and effectuate personal service" on Decent HK. Indeed, the Affidavit proves the opposite – that Plaintiff easily located Decent HK.

Specifically, Plaintiff's "efforts" to locate and personally serve Decent HK boil down to this: a) Plaintiff identified a website operated by Decent HK, decentespresso.com, but the website did not reflect a physical address; b) Plaintiff requested, unsuccessfully, that the lawyer representing the Dismissed U.S. Entities accept service for Decent HK; c) a Declaration filed on behalf of the Dismissed U.S. Entities differentiates them from Decent HK; and d) jurisdictional discovery served on the Dismissed U.S. Entities reflect that Decent HK owns the domain and website, but "[n]o mailing address, email address, or other contact information for Decent HK was disclosed." While this list details the procedural history of this case, it hardly demonstrates "efforts" to actually locate and effectuate personal service on Decent HK. Plaintiff did not even attempt to hire a process server in Hong Kong, the availability of which appears to be plentiful. *See, e.g.*, Google Search for relevant process servers, attached hereto as **Exhibit 2**.

In any event, as explained above, the Affidavit states that Plaintiff "obtained from a third-party website," cafeshow.com, Decent HK's "last known physical address." See D.E. 37 at 5. That address matches precisely with the publicly-available address for Decent HK ubiquitously published on the Internet. See **Composite Exhibit 3** hereto consisting of: Google search for Decent Espresso identifying websites listing its address, Dun and Bradstreet Business Directory showing

11

Decent HK's address, and Government of Hong Kong Companies Registry (same). Again, a diligent effort to locate and personally serve Decent HK (before resorting to substitute service of process on the Florida Secretary of State) would, at the very least, require proof of hiring a process server to go out to physically serve process at Decent HK's robustly published corporate address.

Plaintiff asserts in ¶ 7 of its Affidavit that it "obtained quotes for foreign service but never commissioned such service because Plaintiff was unable to locate a physical address associated with Defendant." But the publicly-available cafeshow.com website, to which Plaintiff eventually resorted, and the other readily available sources referenced above all belie the claimed inability to locate Decent HK's physical address. Plaintiff also could have, but apparently did not, ask the foreign service to locate Decent HK on Plaintiff's behalf. Having failed to try personal service <u>at least once</u> is a complete failure to comply with the due diligence requirements of Fla. Stat. § 48.161. But that's not all.

The statute also requires the party effectuating service to "file proof of service or return receipts showing delivery to the other party by mail or courier and by electronic means, if electronic means were used, unless the party is actively refusing or rejecting the delivery of the notice." § 48.161(2). But the documents proffered as proof of service, D.E. 37, Exhibits G and H, are not proof of service or return receipts and they do not "show delivery" to Decent HK. In particular, the documents: a) are largely unidentified and unauthenticated; b) contain inconsistent tracking information (*see, e.g.*, different label creation dates at 27 and 30); c) do not reflect a delivery address; d) do not identify what was actually delivered; e) do not include the purported recipient's signature; and f) do not evidence that an officer, director, or other authorized person from Decent HK was actually served with them. This is insufficient proof of service under the statute.

And then there is the timeliness issue. Notice of service and a copy of the process "must be sent forthwith" by the party effectuating service." § 48.161(2). Here, Plaintiff served the Florida Secretary of State on or about December 27, 2023, but, according to its own documentation, did not create a shipping label until January 12, 2024, or 16 days later. See D.E. 37, Exhibit H.

Worse, when Plaintiff did get around to sending the summons and Complaint to Decent HK pursuant to the statute, it did so without designating the package for express service, which meant that from the time the Secretary of State accepted service (December 27, 2023) until the time process was allegedly delivered to Decent HK (February 3, 2024), a remarkable 38 days had passed. See D.E. 37, Ex. H.[4] Plaintiff's Notice of Service of the summons and Complaint were clearly not effectuated "forthwith." *See, e.g.*, *Hughes v. American Tripoli, Inc.*, No. 2:04-cv-485, 2007 WL 2071529 at *2 (M.D. Fla. July 17, 2007) ("Notice by certified mail was received by CT Corporation System, defendant's agent, on July 11, 2006. A delay of over 30 days is considered excessive and insufficient for compliance with the statute," citing *Parish Mortg. Corp. v. Davis*, 251 So.2d 342, 343 (Fla. 3d DCA 1971) (37 days); *John Green Corp. v. Coello*, 635 So.2d 127 (Fla. 3d DCA 1994) (60 days)); *Crystal Springs Partners Ltd. v. Michael R. Band, P.A.*, 132 So. 3d 1230, 1231(Fla. 3d DCA 2014) (finding delay of 29 days after receiving correspondence from Florida Secretary of State confirming service to send process to defendant noncompliance with "forthwith" requirement).[5]

---

[4] The U.S. Postal Service provides a Global Express Guaranteed Delivery Service to Hong Kong, with an estimated delivery between 1-3 business days, for just $109.10. See USPS Price List, and Country Conditions attached hereto as **Composite Exhibit 4**. Even the Priority Mail Express International Service, for just $74.35, would have resulted in delivery within 3-5 business days. *Id*.

[5] The delay was consequential. Plaintiff initially contended that Decent HK's 21-day response deadline ran from December 22, 2023, the date it served the Florida Secretary of State. See email dated January 17, 2024 attached hereto as **Exhibit 5** and Motion for Extension of Time, D.E. 31. Upon Plaintiff's filing of a "Return of Service," the clerk even docketed Decent HK's response

In short, even if Plaintiff could establish the right to effectuate substitute service of process on Decent HK, it failed to comply with the procedural requirements for effectuating service and thus the Complaint should be dismissed, or process quashed.

C. **Failure to Effectuate Service in Accordance with the Hague Convention**

Even assuming, again for purposes of argument, that Plaintiff was entitled to effectuate substituted service of process in lieu of personal service on Decent HK, and even assuming that Plaintiff complied with the procedural requirements of the law, Plaintiff's failure to serve process in accordance with the Hague Service Convention deems process insufficient.

To begin with, because the Florida substituted service of process statutes, namely §§ 48.161 and 48.181, "require the transmittal of judicial documents for service abroad … the Hague Service Convention applies." *Castaneda v. Luitpold Pharm., Inc*., No. 6:22-cv-1141, 2022 WL 17542939 at * (M.D. Fla. Nov. 14, 2022) (citing *Vega Glen v. Club Mediterranee S.A*., 359 F. Supp. 2d 1352, 1355–56 (S.D. Fla. 2005); *McClenon v. Nissan Motor Corp. in U.S.A*., 726 F. Supp. 822, 824–25 (N.D. Fla. 1989)).

Fed. R. of Civ. P. 4(h)(2) provides that service upon a corporation shall be effected "in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i)." Accordingly, Rule 4(f) governs the proper service of process on a foreign corporation served outside the United States:

> Service Upon Individuals in a Foreign Country. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed … may be effected in a place not within any judicial district of the United States: (1) by any

---

deadline as January 12, 2024. *See id*. The 38-day delay before process was allegedly received by Decent HK was therefore quite meaningful.

> internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ....

The Hague Convention applies in this case because both the United States and China are signatories. *See, e.g.*, *International Designs Corp., LLC v. Qingdao Seaforest Hair Products Co., Ltd*., No. 17-60431-Civ-Moreno, 2018 WL 2364297 (S.D. Fla. Jan. 4, 2018).

Rule 4(f)(1) gives effect to the Hague Convention, an international treaty that is intended to provide a simplified way to serve process abroad. *McGregor v. In Tune Music Group,* No. 15-62044, 2016 WL 8737815 at *2 (S.D. Fla. Feb. 10, 2016) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). The Hague Convention is also intended "to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id*.

Under the Hague Convention, the principal method for service is through the designated Central Authority of the destination state. *Id*. (citing *Volkswagenwerk*, *supra*, "[u]nder articles 2 through 7 of the Hague Convention, the principal method for service of judicial documents abroad is through a designated Central Authority, which in turn either serves the documents or arranges to have them served by an appropriate agency"); *Bodyup Fitness, LLC v. 2080039 Ontario, Inc*., No. 07-22223, 2008 WL 516996 at *3 (S.D. Fla. Feb. 23, 2008).

In *Int'l Designs, supra,* the plaintiff sued a Chinese corporation for patent infringement. Rather than making any attempt to comply with the Hague Convention, the plaintiff moved the court to permit alternative service of process via email and international courier with confirmed delivery. *Id*. at *1. The motion was granted, service made accordingly, and the defendant moved to dismiss for insufficiency of service of process. *Id*.

The court initially recognized that Rule 4 does not mandate compliance with the Hague Convention because there are other methods of service authorized by the Rule. *Id*. at *2. However, "the relevant case law appears to mandate compliance with the Hague Convention because courts are reluctant to use their discretion to authorize alternative service when Hague Convention service is available." *Id*.

Accordingly, the court in *Int'l Designs* declined alternative service, stating that the plaintiffs "should make an effort to effect Hague Convention service before seeking alterative service." *Id*. at *3. It noted that the case law is "heavily influenced by the 1993 Advisory Committee Notes to Rule 4, which states: "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment (citing *Schlunk*, *supra*, noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner).

Assessing the facts of the case, Judge Moreno reasoned:

> Here, there is no evidence that SeaForest's address is unknown, that SeaForest is evading service, or that any great urgency exists. Further, Plaintiffs have not shown that service is particularly difficult. Rather, although Plaintiffs have known SeaForest's Chinese address since at least August 2016, they have not indicated that they have attempted to submit a request for service to the Chinese Central Authority, even during the nearly six-month pendency of this motion.

The court ultimately held:

> Given the circumstances in this case, and being heavily influenced by the Advisory Committee Notes and persuasive case law, the Court declines to authorize alternate service at this time, as Plaintiffs have not yet attempted to serve SeaForest through China's Central Authority as contemplated by the Hague Convention. The Court is not satisfied that alternate service is warranted under these facts. Plaintiffs have simply not reasonably attempted to effectuate service

16

> on SeaForest through internationally agreed methods or shown that such methods are unduly burdensome or futile. This Court is wary of circumventing the Hague Convention without Plaintiffs first attempting to comply with it, especially in light of the Advisory Committee Notes on Rule 4(f)(3).

*Int'l Designs, supra*, at *4 (also noting that "the Eleventh Circuit has stressed the need for formal service of process despite actual notice of an action by a defendant," citing *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747 (11th Cir. 2016)).

Other courts have similarly required plaintiffs to attempt service under the Hague Convention as the primary means of serving process abroad. *See, e.g.*, *Castaneda, supra* (alternative service not permitted where plaintiff "has not attempted to serve (the defendant) through the Hague Service Convention, despite the lawsuit's pendency since June of this year, and she has not explained why service has not been attempted"); *Vega, supra* ("[c]ompliance with the Hague Service Convention is mandatory in all cases to which it applies"); *McClenon, supra* (service by mail of substitute service of process was inadequate under the Hague Convention).

Here, just as in the foregoing cases, Plaintiff made no attempt to effectuate service of process on Decent HK under the Hague Service Convention. For example, Plaintiff did not make any attempt to serve the Central Authority of Honk Kong under Article 5 of the Convention. Nor did Plaintiff comply with the Translation Requirements of Art. 5(3), which mandates that Plaintiff obtain either a certification from this Court that Decent HK understands English or two copies of the translation of the process. See Hague Service Convention website on Requirements for Service in Hong Kong, attached hereto as **Exhibit 6**.

And while Plaintiff avers that it sent the summons and Complaint by email and registered mail, under *Int'l Designs*, those alternatives to service are not permitted until Plaintiff first attempts

to effectuate service under the Hague Service Convention, which, under the above authorities, is most commonly done by going through the Hong Kong Central Authority.[6]

In sum, Plaintiff failed to serve the summons and Complaint in accordance with the Hague Service Convention and the Complaint should therefore be dismissed.

## CONCLUSION

Plaintiff has not established a basis for substituted service of process under Florida law. Even if there were a basis, Plaintiff failed to adhere to the strict procedural requirements for effectuating same, including making any attempt to personally serve Decent HK. In any event, process was not served in accordance with the Hague Service Convention. Therefore, service of process is insufficient and the Amended Complaint should be dismissed under Rule 12(b)(5). Alternatively, service should be quashed.

WHEREFORE, Decent Espresso International Ltd. respectfully requests that the Court dismiss the Amended Complaint or, alternatively, quash service of process, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

**JOHNSON & MARTIN, P.A.**
*Attorneys for Decent HK*
500 West Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL  33309
T: 954-790-6700; D: 954-790-6698
E:  moriah.lucas@johnsonmartinlaw.com

---

[6] Even if mail service on Decent HK was permitted before attempting service in accordance with the Hague Service Convention, it is still insufficient because Plaintiff never provided proof of signature as required by Fed. R. of Civ. P. 4(l)(2)(B) ("receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee"). *See, e.g., Hernandez v. State Farm Mut. Auto Ins.*, 32 So. 3d 695, 699 (Fla. 4th DCA 2010) (filing of unsigned return receipt held insufficient to comply with statute).

By: /s/ *Matthew S. Nelles*<br>
Matthew S. Nelles<br>
Florida Bar No. 009245<br>
matt.nelles@johnsonmartinlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, and a true and correct copy of the same will be furnished by email to all counsel of record.

*/s. Matthew S. Nelles*
Matthew S. Nelles

**SERVICE LIST**

Mark C. Johnson, Esq.
Florida Bar No. 84365
MJ@JohnsonDalal.com
JOHNSON DALAL
111 N. Pine Island Road, Suite 105
Plantation, FL  33324
Eservice:  service@JohnsonDalal.com
*Attorneys for Plaintiff*